[No. 37605-9-II.   Division Two.   August 4, 2009.]

DONALD R. THOMPSON ET AL., *Appellants*, v. MARY C. LENNOX, *Respondent*.

*Candiss A. Watson* (of *Law Office of Anne Watson, PLLC*) and *Donald G. Grant* (of *Grant & Elcock, PLLC*), for appellants.

*Steven E. Turner* (of *Total Mechanical, Inc.*), and *Kathryn E. Smith* (of *Miller Nash*) for respondent.

¶1 BRIDGEWATER, J. — Donald R. Thompson and Sheri D. Nimmo appeal the trial court's award of appellate fees and costs against them following dismissal of their abandoned appeal. We reverse.

## FACTS

¶2 This case began as a dispute between neighbors, when one neighbor built a house that blocked the other's view. Don Thompson and Sheri Nimmo (hereafter Thompsons) built their home in the Summer Hills development of Brush Prairie, Washington. They owned vacant land across the street to the west of their residence and

planned to keep the land in order to preserve their view of the mountains and horizon beyond it.

¶3 In spring 2004, a real estate agent for Mary Lennox inquired about purchasing the western lot. The Thompsons indicated they might consider a sale but expressed concern about the height of any proposed residence. The Thompsons and Lennox agreed to a purchase price of $237,000, and signed a purchase and sale agreement for the lot in July. The agreement was contingent on the parties' mutual agreement regarding Lennox's architectural plans. The Thompsons required that a restrictive covenant, which would include a written height restriction for structures on the lot, be incorporated in the deed. The parties reached agreement as to the terms of the restrictive covenant, and their transaction closed on December 15.

¶4 The restriction was set out as an open space easement and provided that the roof height of any residence on the property could not exceed 25 feet. The parties did not discuss the language of the height restriction before signing the final easement. They did not communicate with each other about how they interpreted the restriction, nor did they discuss the location from which the height of Lennox's residence was to be measured. The foundation was poured in October 2005. The Thompsons believed the foundation would position Lennox's house above the 25-foot height restriction. Lennox told the Thompsons the height was to be measured from her house's easternmost point. The Thompsons disagreed and responded that Lennox was in violation of the parties' agreement.

¶5 The Thompsons filed a complaint on December 12, 2005, alternatively seeking injunctive relief or damages for Lennox's alleged breach of the open space easement. The case was tried to Clark County Superior Court without a jury. The court concluded that the height restriction was ambiguous, that Lennox's interpretation was reasonable, and that she did not breach the covenant.

¶6 Lennox moved to recover more than $74,000 in attorney fees and costs. The court reduced the award to $60,000

and entered judgment for Lennox. The Thompsons ultimately satisfied the judgment in full, including post-judgment interest. But in the meantime, the Thompsons appealed the trial court's rulings by notice filed February 2, 2007 (*Thompson v. Lennox*, No. 35898-1-II (Wash. Ct. App.)). This court eventually dismissed the appeal following the Thompsons' failure to file an opening brief. The ruling dismissing the appeal became the final decision terminating review on November 30, 2007. The mandate issued on December 5, returning the case to the superior court "for further proceedings in accordance with the determination of that court." Clerk's Papers (CP) at 100.

¶7 Two months after the ruling dismissing the appeal became final, Lennox filed a motion in the superior court for a supplemental award of attorney fees and costs, claiming the appeal had required her to incur $7,000.00 in additional fees. Lennox's counsel presented an accounting of some 30 hours billed to his client for the services of a paralegal and three of his firm's lawyers. The accounting reflected Lennox's counsel's activities after the Thompsons filed the notice of appeal and included collection efforts on the judgment before the Thompsons filed a supersedeas bond, time spent challenging the adequacy of the supersedeas bond, settlement negotiations, and efforts monitoring the progress of the appeal and ensuring an adequate record. Counsel also sought fees for bringing the additional fee motion, ultimately requesting a total additional award of $8,593.86.

¶8 The trial court awarded appellate attorney fees and costs to Lennox. By letter ruling, the trial court advised counsel that it was making the award "as the defendant is allowed fees under the original contract. She prevailed in this case and an award of fees is given as she also 'prevailed' on appeal." CP at 165. The court found, however, that the hourly rate billed for the legal assistant's services was not reasonable and reduced the requested award for appellate fees and costs to $6,200. The court entered a supplemental judgment for that amount. The Thompsons' current appeal followed.

## ANALYSIS

### I. Propriety of Trial Court's Award of Appellate Expenses

¶9 The Thompsons assert that the trial court was without authority to award appellate attorney fees and costs under the circumstances of this case. We agree.

¶10 In Washington, a prevailing party may recover attorney fees authorized by statute, equitable principles, or agreement between the parties. *Landberg v. Carlson*, 108 Wn. App. 749, 758, 33 P.3d 406 (2001), *review denied*, 146 Wn.2d 1008 (2002). Generally, if such fees are allowable at trial, the prevailing party may recover fees on appeal as well. *Landberg*, 108 Wn. App. at 758 (citing RAP 18.1). Here, there is no dispute that fees and costs are available to the prevailing party as provided in the open space easement. The dispute turns on which court has the authority to award fees that were incurred during the Thompsons' abandoned appeal. Before the trial court, the Thompsons argued that Lennox had brought her motion for appellate fees and costs to the wrong court. Lennox answered that the Rules of Appellate Procedure (RAP) did not contemplate the circumstances of this case (i.e., an abandoned appeal) and that, after the mandate issued, the case was back in front of the superior court in any event.

¶11 RAP 18.1 addresses attorney fees on appeal and provides that, if applicable law grants a party the right to recover reasonable attorney fees or expenses on review, the party "must request the fees or expenses as provided in this rule, unless a statute specifies that the request is to be directed to the trial court." RAP 18.1(a). The party seeking appellate fees "must" devote a section of its opening brief to the request for the fees or expenses, the request should not be made in the cost bill, and, in a motion on the merits pursuant to rule 18.14, the request for fees and supporting argument "must" be included in the motion or response if the requesting party has not yet filed a brief. RAP 18.1(b).

¶12 Within 10 days after the filing of a decision awarding a party the right to reasonable attorney fees and expenses on appeal, the party being awarded fees "must" serve and file in the appellate court an affidavit detailing the expenses incurred and the services performed by counsel. RAP 18.1(d). A party may object to the specific fee and expense requests presented in the affidavit by serving and filing an answer with appropriate documentation containing specific objections. The answer must be served and filed within 10 days after service of the affidavit of fees and expenses, and any reply to an answer may be served and filed within 5 days after service of the answer. RAP 18.1(e).

¶13 A commissioner or clerk will determine the amount of the award, usually without a hearing. RAP 18.1(f). A party may object to the commissioner's or clerk's award only by filing a motion to modify under RAP 17.7. RAP 18.1(g).

¶14 The clerk "will include the award" of attorney fees and expenses in the mandate, the certificate of finality, or in a supplemental judgment. RAP 18.1(h). The appellate court "may direct" that the amount of fees and expenses will be determined by the trial court after remand. RAP 18.1(i).

¶15 Relying on RAP 18.1(b)'s requirement that a party's request and argument for appellate fees be included in its first brief or motion filed in the appellate court, Lennox contends that because the appeal was abandoned and no briefs were filed, she had no opportunity to seek fees in the Court of Appeals. She contends that the appellate court rules are designed to deal with actual appeals rather than threatened appeals.

¶16 But Lennox's position does not comport with a reading of the appellate rules as a whole. Read together, the noted provisions of RAP 18.1 make clear that a party seeking fees on appeal must clearly set forth the request and the basis for same before the appellate court. A party's failure to comply with the rule's provisions warrants denial of her fee request. *See Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998)

(RAP 18.1 requires party requesting appellate fees to provide argument and citation to authority in separate section of brief in order to apprise the appellate court of the appropriate grounds for an award of attorney fees as costs).

¶17 Moreover, RAP 17.1(a) provides that a person "may seek relief . . . by motion" where the relief sought is for "other than a decision of the case on the merits." The rule lists motions that are to be determined by judges, but also provides that "[a]ll other motions may be determined initially by a commissioner or the clerk of the appellate court." RAP 17.2(a). Accordingly, Lennox had an alternative route for requesting relief and was not foreclosed from seeking attorney fees from the Court of Appeals simply because the Thompsons never filed an opening brief.

¶18 Also, Lennox's view that the trial court had authority to award her fees on appeal is dubious under the circumstances presented. Appellate court jurisdiction was triggered in this case when the Thompsons filed their notice of appeal in the trial court. *See* RAP 6.1 ("appellate court 'accepts review' of a trial court decision upon the timely filing in the trial court of a notice of appeal from a decision which is reviewable as a matter of right"). Although this court subsequently issued its mandate following the dismissal of the Thompsons' appeal for lack of prosecution, the rules provide that this court retained jurisdiction over any appellate fee issue. Although RAP 12.7 provides that the Court of Appeals loses the power to change or modify its decision upon issuance of a mandate, *see* RAP 12.7(a), the rule also expressly provides that the appellate court retains jurisdiction on the issue of appellate fees. "The appellate court retains the power after the issuance of the mandate to act on questions of costs as provided in Title 14 and on questions of attorney fees and expenses as provided in rule 18.1." RAP 12.7(c). Moreover, although numerous examples can be found of cases in which the Court of Appeals has directed the trial court on remand to address any attorney fee issues, *see, e.g.*, *Roller v. Dep't of Labor & Indus.*, 128 Wn. App. 922, 932, 117 P.3d 385 (2005); *Sloan v. Thompson*,

128 Wn. App. 776, 793, 115 P.3d 1009 (2005), *review denied*, 157 Wn.2d 1003 (2006), that fact is not dispositive because court rules specifically provide for the express delegation of that function. As noted, RAP 18.1(i) provides that the appellate court "may direct that the amount of fees and expenses be determined by the trial court after remand."

¶19 The Thompsons rely upon the general rules contained in three cases: *State ex rel. Fosburgh v. Ronald*, 25 Wn.2d 276, 280, 170 P.2d 865 (1946); *Spokoiny v. Washington State Youth Soccer Ass'n*, 128 Wn. App. 794, 805, 117 P.3d 1141 (2005), *review denied*, 156 Wn.2d 1036 (2006); and *Meštrovac v. Department of Labor & Industries*, 142 Wn. App. 693, 711, 176 P.3d 536, *review granted on other grounds*, 165 Wn.2d 1001, 198 P.3d 511 (2008). In *Fosburgh*, our Supreme Court addressed a writ of certiorari challenging the propriety of the trial court's order and judgment entered following remand, to the extent the judgment involved taxation of costs in the Supreme Court that were not sought while the case was before the Supreme Court. Our Supreme Court modified the order and judgment to exclude the cost of a supersedeas bond, which had not been included in the expenses sought in the Supreme Court and thus had not been awarded by that court. In so holding, the Supreme Court cited with approval the following general rules: "It is elementary that the superior court has no jurisdiction to tax costs incurred in the prosecution of an appeal in [the Supreme Court]." *Fosburgh*, 25 Wn.2d at 280. " 'Where the reviewing court on reversal awards costs of appeal against a party, the lower court has no jurisdiction either directly or indirectly to reverse or to modify such order.' " *Fosburgh*, 25 Wn.2d at 280 (quoting 20 C.J.S. *Costs* § 295, at 543). " 'If the court before which the final determination of a case is heard does not award costs, there is no authority elsewhere to adjudge them, and if it does award costs no succeeding judge can make a different order.' " *Fosburgh*, 25 Wn.2d at 280 (quoting 20 C.J.S. *Costs* § 264b at 497).

¶20 In *Spokoiny*, Division One awarded attorney fees to the prevailing party based on an applicable fee provision

contained in a sports association's bylaws. The court held that "[w]here there is a basis for an award of attorney fees to the prevailing party at trial, the *appellate* court has authority to make such an award on appeal." *Spokoiny*, 128 Wn. App. at 805 (emphasis added) (citing *Standing Rock Homeowners Ass'n v. Misich*, 106 Wn. App. 231, 247, 23 P.3d 520, *review denied*, 145 Wn.2d 1008 (2001)). And in *Meštrovac*, Division One reversed the trial court's award of attorney fees to a workers' compensation claimant for preparation of briefing and other work performed on appeal where the claimant had failed to request such fees from the Court of Appeals. *See Meštrovac*, 142 Wn. App. at 710-11. The *Meštrovac* court, citing RAP 18.1, held that "[a] request of attorney fees incurred before this court must be made to this court." *Meštrovac*, 142 Wn. App. at 711.

¶21 Lennox correctly notes that none of these cases specifically addresses the circumstance presented here. Nevertheless, the trial court's award of additional fees to Lennox for her appellate preparations when such fee request was never presented to or awarded by the Court of Appeals seems at odds with the rules relied upon in the above cases. Lacking clear precedent, it falls to this court to formulate a workable rule from the noted court rules and cases discussed above. The rule we enunciate is gleaned from the noted provisions and authorities that the appellate court retains the power to make discretionary awards of fees on appeal, even after the mandate issues. While the appellate court may expressly delegate the authority to determine the amount of appellate fee awards to the trial court on remand, *see* RAP 18.1(i), absent such express delegation, the appellate court retains its authority over the award of appellate fees and parties must seek such fees in the appellate court. *See* RAP 12.7(c); RAP 18.1; *cf.* RAP 18.2 (costs will be awarded in case dismissed on a motion for voluntary withdrawal of review *only* if the appellate court so directs at the time the motion is granted). Moreover, the issuance of a mandate does not divest the Court of Appeals

of jurisdiction regarding cost and fee issues. *See* RAP 12.7(c).[1]

¶22 Lennox convinced the trial court that it had jurisdiction to award appellate fees in part based on a letter from this court's clerk. At the initial hearing on Lennox's motion for appellate fees, Lennox's counsel asserted that his office had called this court's clerk's office and was told that he could not bring a motion in the Court of Appeals for appellate fees, and that he could "get that in writing." *See* Report of Proceedings (RP) (Feb. 8, 2008) at 15. The trial judge instructed counsel to do so. At a later hearing, Lennox's counsel stated that he "got the clerk to indicate in a letter that you would not be stepping on the Court of Appeals' toes or overstepping your jurisdiction or anything by awarding attorneys' fees." RP (Feb. 22, 2008) at 10. But in fact, the clerk's letter, which was addressed to the trial judge, stated:

> In its mandate of December 5, 2007, the Court of Appeals, Division II remanded the above referenced case [No. 35898--1-II] to the Superior Court. Having taken that action, the Court of Appeals retains no jurisdiction to issue orders in the above referenced case. The Superior Court now has jurisdiction to take all actions *consistent with the mandate*.

CP at 160 (emphasis added). The noted mandate stated:

> This is to certify that the Court of Appeals of the State of Washington, Division II, entered a Ruling Dismissing Appeal in the above entitled case [No. 35898-1-II] on October 30, 2007. This ruling became the final decision terminating review of this court on November 30, 2007. Accordingly, this cause is mandated to the Superior Court from which the appeal was taken for further proceedings in accordance with the determination of that court.

CP at 100.[2]

---

[1] Notably, nothing in the plain language of RAP 12.7(c) limits the Court of Appeals' retention of jurisdiction over appellate fee and cost issues to *pending* fee requests. *See* RAP 12.7(c).

[2] The October 30, 2007, ruling dismissing appeal stated:

¶23 As can be seen, the clerk's letter stated that the superior court had jurisdiction to take all actions "consistent with the mandate." CP at 160.[3] "A 'mandate' is the written notification by the clerk of the appellate court to the trial court and to the parties of an appellate court decision terminating review." RAP 12.5(a). Generally, upon issuance of a mandate, the appellate court's action becomes effective and binding on the parties and "governs all subsequent proceedings in the action in any court." RAP 12.2. As noted, the clerk of the appellate court "will include" any award reflecting appellate expenses in the mandate, and such award "may be enforced" in the trial court. RAP 18.1(h). Notably, the mandate here did not include a fee award. Given the mandate's silence on the matter of appellate fees, the trial court had nothing in that regard to enforce. *See Ethredge v. Diamond Drill Contracting Co.*, 200 Wash. 273, 276, 93 P.2d 324 (1939) (trial court has a duty to comply with the mandate upon remand). Consequently, by merely acknowledging that the trial court had jurisdiction to act consistently with the mandate, the clerk's letter did not amount to agreement with the notion that the trial court had jurisdiction to award appellate fees, as Lennox's counsel contended to the trial court. Accordingly, the trial court erred in awarding Lennox appellate fees. *See Meštrovac*, 142 Wn. App. at 711 (request of attorney fees incurred on appeal must be made to appellate court).

---

**THIS MATTER** comes before the undersigned [commissioner] to dismiss the above-entitled appeal [No. 35898-1-II] as it appears to have been abandoned. A review of the file indicates that the Appellant's Brief and previously imposed sanctions have not been filed as previously ordered in the Conditional Ruling of Dismissal and that dismissal is warranted. Accordingly, it is

**ORDERED** that the above-entitled appeal is dismissed.

CP at 102.

---

[3] The clerk's letter also stated that having issued its mandate, the Court of Appeals retained no jurisdiction to issue orders in the case. Generally, that is correct as no matters were pending. *See* RAP 12.5(a), 12.7(a). However, as noted, there remained the possibility of further action by this court under RAP 12.7(c).

¶24 As for any *costs* on review, Lennox is clearly foreclosed. Costs on review must be sought in the appellate court by filing a cost bill with that court within 10 days after the filing of the appellate court decision terminating review. RAP 14.1, 14.4. *Guardianship Estate of Keffeler v. Dep't of Soc. & Health Servs.*, 151 Wn.2d 331, 345, 88 P.3d 949 (2004) (under RAP 14.1(b) the appellate court that accepts review and makes a final determination of the case determines and awards costs). Because Lennox never filed a timely cost bill with this court she is foreclosed from receiving her appellate costs.

¶25 In sum, we hold that Lennox is foreclosed from seeking fees and expenses on appeal months after this court's mandate issued. The trial court erred in awarding Lennox appellate fees under these circumstances.

## II. Attorney Fees in the Present Appeal

¶26 Both parties seek attorney fees and costs regarding the present appeal and both have properly argued for such an award in separate sections of their briefs as required by RAP 18.1(b).

¶27 Fees may be awarded as part of the cost of litigation when there is a contract, statute, or recognized ground in equity for awarding such fees. *W. Coast Stationary Eng'rs Welfare Fund v. City of Kennewick*, 39 Wn. App. 466, 477, 694 P.2d 1101 (1985). "A contractual provision for an award of attorney's fees at trial supports an award of attorney's fees on appeal under RAP 18.1." *W. Coast Stationary Eng'rs Welfare Fund*, 39 Wn. App. at 477. Here, the parties agreed that the prevailing party is entitled to related costs and attorney fees regarding court actions to enforce the covenant's height restriction. Accordingly, we award fees and costs incurred in the present appeal to the Thompsons as the prevailing party in an amount to be set by a commissioner of this court.

¶28 Reversed.

ARMSTRONG and HUNT, JJ., concur.